# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

QUINTON JAMES GROVE,       )
                                        )

           Petitioner,          )
                                          )

v.                              )   Nos. 2:19-CV-173
                                        )        2:17-CR-092

UNITED STATES OF AMERICA,   )
                                          )

           Respondent.        )

## <u>**MEMORANDUM OPINION**</u>

Before the Court is Quinton James Grove's ("Petitioner's"), by and through counsel, motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 361].[1] The United States has responded in opposition [Doc. 6]. Petitioner did not file a reply, and the time for doing so has passed. *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 2]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 361] will be **DENIED**.

## I.    BACKGROUND

In January 2018, Petitioner and eight co-defendants were charged in a seven-count superseding indictment pertaining to distribution of 1,000 kilograms or more of marijuana

---

[1] Document numbers not otherwise specified refer to the civil docket.

along with several gun-related charges [Crim. Doc. 101]. Petitioner was named in one count. *See id.*

On January 22, 2018, Petitioner entered into a plea agreement with the government. [Crim. Doc. 108]. Petitioner agreed to plead guilty to the lesser included offense of Count One of the superseding indictment, a conspiracy to distribute 100 kilograms of marijuana in violation of 18 U.S.C. § 841(b)(1)(B). [*See id*.]. The plea agreement was signed by Petitioner and attorney Joseph Fanduzz.

In his plea agreement, Petitioner acknowledged that beginning in approximately December of 2012 and continuing to in or about July 2017, he conspired with at least one other person to distribute and possess with the intent to distribute at least 1000 kilograms of marijuana, a Schedule I controlled substance. On April 4, 2017, a Wyoming State Trooper stopped a Cruise America recreational vehicle ("RV") on Interstate 80 in Wyoming for traffic violations. A subsequent search of the RV resulted in the discovery of approximately 100 pounds of processed marijuana, 2 pounds of butane honey oil (BHO) and approximately 100 pills that tested positive for Fentanyl. During the search of the RV, two loaded firearms, a Kimber, Custom Carry II, .45 caliber pistol, and a FIE, model Titan, .25 caliber semiautomatic pistol were found. On April 13, 2017, an agent with the Tennessee Bureau of Investigation ("TBI") contacted Cruise America RV, located at 2305 Hatcher Drive Northwest in Knoxville, and obtained surveillance video and the receipt of the rental of the RV stopped in Wyoming. Petitioner and a co-defendant were seen signing the paperwork for the rental.

2

On April 27, 2017, following the purchase of marijuana from a co-defendant at 1512 Warpath Drive, Kingsport, Tennessee, a TBI agent and Kingsport Police Department (KPD) Vice Detective initiated mobile surveillance of a black Dodge Charger, driven by Petitioner who had an active Federal warrant for violation of supervised release. The agent and detective pulled directly behind the vehicle and, within seconds, the officers were greeted with the overwhelming smell of marijuana. A short time later a KPD marked police cruiser attempted to stop Defendant and he fled from officers and was not apprehended. On April 27, 2017, the agent contacted a Washington State Patrol (WSP) Trooper. The trooper called the agent on April 28, 2017, and stated that he had stopped Petitioner on March 30, 2017, for speeding and subsequently arrested Petitioner. The trooper stated that Petitioner was driving a 2017 white Audi A8, which was a rental vehicle, and had approximately $6,000 in U.S. Currency on his person.

On May 2, 2017, agents executed a search warrant Petitioner's Dodge Charger and found two large vacuum sealed bags under the driver seat that smelled strongly of marijuana, Eastman Credit Union Bank Statements in Petitioner's name, a Northeast State community college student ID in Petitioner's name, a forged Ohio State driver's license bearing Petitioner's photo, which bore the name of "Aaron Redman," and a purchase receipt for a 2017 Yamaha R6 motorcycle in Petitioner's name with a purchase price of $12,000. Investigation also revealed that Petitioner had arranged multiple marijuana-trafficking trips, traveled to Oregon, paid approximately $100,000 for marijuana, and instructed others to drive the rented recreational vehicle back to Tennessee. Petitioner

agreed that he was responsible for the distribution of at least 100 kilograms but less than 400 kilograms of marijuana. [*See id.*].

The Court conducted a change of plea hearing on February 8, 2018. Although there is no transcript of that hearing in the record, the Court recalls conducting its standard colloquy with Petitioner and finding him competent to enter a guilty plea.[2] The Court confirmed that Petitioner indeed wished to plead guilty. The Court also confirmed: that Petitioner had been afforded ample time to discuss the case with his attorney; that he believed that his attorney was fully aware of all the facts on which the charges were based; that counsel had explained the meaning of any words Petitioner might not have understood; that counsel had explained the terms of Petitioner's plea agreement to him; and that Petitioner understood that his sentence would be determined *by the Court*.

The presentence investigation report ("PSR") calculated a total offense level of 26 and criminal history category of III, resulting in a guideline range of 78 to 97 months, with a mandatory minimum sentence of 60 months. [Crim. Doc. 177, ¶¶ 75-76].

Petitioner, through counsel, filed a notice of objections to the PSR wherein Petitioner objected to the 3-point enhancement in paragraph 45 of the PSR for being a manager or a supervisor of the offense and to the 2-point enhancement in paragraph 46 for obstructing justice. [Crim. Doc. 189]. Petitioner, through counsel, specifically argued that the obstruction enhancement should not be applied as Petitioner's statement was provided

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

4

under protections of a *Kastigar* letter and could not be used against him in the criminal proceeding, and that there was "no evidence to support the proposition that [Petitioner] created a substantial risk of death or serious bodily injury to another person or to support a nexus between [Petitioner]'s flight and the crime of conviction." [*Id.* at 12-13]. Petitioner, through counsel, also filed a sentencing memorandum acknowledging the Government's filing of a U.S.S.G. § 5K1.1 downward departure motion, but requested that the Court grant the motion with a four-level reduction instead of the Government requested two-level reduction. [Crim. Doc. 201, p. 9]. Petitioner, through counsel, requested a sentence at the bottom of the guideline range. [*Id.* at 11].

The Government filed a notice of no objections to the PSR. [Crim. Doc. 179]. The Government also filed a sentencing memorandum wherein it indicated that the correct advisory guideline calculation was 78 to 97 months and reserved the right to file any appropriate motion for departure. [Crim Doc. 183]. The Government filed a sealed motion for downward departure pursuant to U.S.S.G. § 5K1.1, requesting a two-level reduction to reduce the advisory guideline range of 63 to 78 months and requested Petitioner be sentenced within that guideline range. [Crim. Doc. 196].

On May 31, 2018, the Court sentenced Petitioner to a total of 60 months' imprisonment, after sustaining Petitioner's objection to the role enhancement, and denying Petitioner's objection of the obstruction enhancement. [Crim. Doc. 220, p. 1]. The Court also granted the United States' motion for downward departure under U.S.S.G. § 5K1.1. [Crim. Doc. 215]. Petitioner, acting *pro se* filed a direct appeal on June 11, 2018 [Crim.

Doc. 232], which was dismissed on September 17, 2018 [Crim. Doc. 335], and on October 10, 2019, through counsel, filed this timely § 2255 motion.

## II.    STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

6

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## III.   ANALYSIS

Petitioner raises several claims in this § 2255 motion: 1) his plea was not knowingly made and failed to make out a full factual basis, 2) ineffective assistance of counsel for failing to seek a sentence below the mandatory minimum for the Government's abuse of

7

discretion in not seeking downward departure pursuant to U.S.S.G. § 5K1.1, 3) ineffective assistance of counsel for failing to provide full discovery to Petitioner, 4) ineffective assistance of counsel for "not ensuring there was an factual basis for the plea," 5) ineffective assistance of counsel for failing to timely object to "various sentencing issues" including "a 2-point enhancement for reckless endangerment during flight," and 6) ineffective assistance of counsel for failing to "object to the probation departments untimely disclosure of prior probation violation in violation of 18 U.S.S.C. app. § 7B1.2." [Doc. 1; Crim. Doc. 361]. The Court will address Claim 1 first and then will address the ineffective assistance of counsel claims together.

### A. Claim 1 – Plea Agreement Deficiencies

#### a. *Collateral Attack Waiver and Procedural Default*

As a preliminary matter, the Government asserts that Petitioner's claim is procedurally defaulted, and he explicitly waived his right to file a § 2255 motion except for claims of ineffective assistance of counsel or prosecutorial misconduct [Doc. 6, p. 4]. Accordingly, the government asserts that his § 2255 motion should be summarily denied. [*Id.*].

When a petitioner knowingly, intelligently, and voluntarily waives the right to collaterally attack his sentence, he is precluded from bringing such claims. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing to *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the

collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision: "[t]he defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a §2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel." [Crim. Doc. 120, p. 7]. At Petitioner's change-of-plea hearing, the Court reviewed the waiver provision and verified that Petitioner understood the meaning of the waiver. The Supreme Court has held that "the representations of the defendant, h[is] lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Petitioner admitted that he understood the terms of the waiver provision, and nothing in the record suggests otherwise.

Further, Petitioner's Claim 1 amounts to a conclusory allegation, which does not state a cognizable § 2255 claim. *See Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972) (requiring that a § 2255 movant set forth facts entitling him to relief); *Worley v. United*

9

*States*, Nos. 2:15-cr-12, 2:15-cv-305, 2018 WL 5984202, at *8 (E.D. Tenn. Nov. 14, 2018) (same). Petitioner merely states that his plea agreement was not knowingly, voluntarily and intelligently made, and does not provide any facts to support that assertion.

Even if the Court could determine some specific factual allegations in Claim 2, the claim is nonetheless procedurally defaulted, because Petitioner failed to raise it on appeal. Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If a Petitioner cannot show cause and prejudice, he may be able to obtain review, if his case falls within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, such as when new evidence shows that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23, citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Here, Petitioner has not attempted to show cause or prejudice for his failure to raise this claim on direct appeal, nor has he attempted to show that he is actually innocent. Accordingly, Petitioner's Claim 1 is procedurally defaulted. Thus, Petitioner is not entitled to relief under § 2255 as to this claim.

## B. Claims 2-6 – Ineffective Assistance of Counsel Claims

As discussed above, Petitioner's claims of ineffective assistance of counsel are not barred by his collateral attack waiver. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for h[er] defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.*

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id.* at 687. The

Case 2:17-cr-00092-RLJ-MCLC   Document 391   Filed 01/06/21   Page 11 of 16   PageID #: 2473

movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### a. Claims 2 and 5

Petitioner's arguments for ineffective assistance of counsel in Claims 2 and 5 are that the Government failed to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1 and that Petitioner's counsel failed to object to an enhancement in the PSR for "reckless endangerment." [Doc. 1, Crim Doc. 361]. However, these arguments are directly contradicted by the record and are not credited. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The United States filed a motion for downward departure under U.S.S.G. § 5K1.1 [Crim. Doc. 196] which was granted by the Court at sentencing. Further, Petitioner's counsel raised an objection to the enhancement in the PSR for reckless endangerment, arguing that there was no nexus between the underlying offense and reckless flight. [Crim. Doc. 189]. In that same argument, Petitioner's counsel also raised the issue of information obtained through a *Kastigar* agreement to support this claim. [*Id*.]. This objection was overruled at sentencing after hearing argument. [Crim. Doc. 215]. Based on the Government's Motion for Downward Departure, and the Court sustaining counsel's objection to the enhancement for being a supervisor or manager, Petitioner's offense level was reduced to 23 and advisory guideline range was reduced to 60 to 73 months. Petitioner

was sentenced to 60 months' imprisonment, which was the statutory minimum. Petitioner's counsel cannot be deemed ineffective for doing precisely what Petitioner now claims he should have done.

Petitioner also asserts that he provided testimony under *Kastigar v United States*, 406 U.S. 441 (1972), that was never fully considered and was used in violation of the *Kastigar* agreement. [Doc. 1, Crim. Doc. 361]. This argument fails to include factual support regarding the information allegedly not considered, or what information was used in violation of the agreement. Thus, Petitioner's claim amounts to a conclusory allegation, which does not state a cognizable § 2255 claim. *See Green*, 454 F.2d at 53 (requiring that a § 2255 movant set forth facts entitling him to relief); *Worley*, 2018 WL 5984202 at *8. Further, Petitioner has not alleged that he would not have pled guilty or proceeded to trial but for counsel's mis-advice. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner is not entitled to relief under § 2255 as to these claims.

### b. Claims 3 and 4

Petitioner's Claims 3 and 4 relate to counsel's alleged failure to provide full discovery to Petitioner and not ensuring there was factual basis for the plea. Claim 3 lacks specific factual support for the allegation as Petitioner fails to establish how counsel's alleged ineffectiveness prejudiced him in any way. Petitioner does not explain how reviewing more discovery would have affected his decision making regarding whether to go to trial, nor does he claim that he would have gone to trial but for counsel's failure. As

a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

Regarding Claim 4, Petitioner asserts that he was misinformed about the amount of drugs for which he would be held responsible. Petitioner asserts that he was "specifically informed that he would only be held responsible for the one RV trip in which 107 lbs. of marijuana were confiscated." [Doc. 1, Crim Doc. 361]. Petitioner does not specify who said this to him or when it was stated. Petitioner also offers no other facts to support his claim that the plea agreement lacked factual basis to support his conviction.

A criminal defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer an even more lenient plea. Even if Petitioner's attorney would have objected to the amount of drugs Petitioner was responsible for in the plea agreement, Petitioner has not shown that the result would have been different. As discussed above, Petitioner affirmed at the change of plea hearing that he wished to plead guilty, and that his attorney had adequately covered the plea agreement with him. The Plea Agreement clearly states that Petitioner will plead guilty to "[t]he lesser included offense of Count One, that is a conspiracy to distribute a 100 kilograms of marijuana in violation of 18 U.S.C. 841(b)(1)(B). [Crim. Doc. 108, p. 1]. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."

14

*Blackledge*, 431 U.S. at 74. Petitioner's unsupported allegations are directly contradicted by the record and are not credited. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner is not entitled to relief under § 2255 as to these claims.

### c. Claim 6

Petitioner's Claim 6 is convoluted in that Petitioner seems to blame his counsel for the probation officer's alleged failure to promptly report a violation of probation or supervised release. [Doc. 1, Crim. Doc. 361]. Again, Petitioner fails to specify any violation which was not promptly reported to the Court, nor does he explain how failing to report a violation had any effect on his sentencing. Petitioner also fails to provide any legal authority that this issue is even proper for review under a § 2255 motion. As a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery*, 2020 U.S. App. LEXIS 21840 at *3–4. Accordingly, Petitioner is not entitled to relief under § 2255 as to this claim.

### CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 361] will be **DENIED** and **DISMISSED**.

## IV. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must

15

"engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Further, having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

_____
s/ Leon Jordan
United States District Judge